UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MICHAEL A. FREEMAN, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:19-CV-00008-JRG-CRW |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Michael A. Freeman's Memrandum [sic] in Support of Motion to Vacate, Set Aside, or Correct Sentence Filed by a Person Custody Pursuant to 28 U.S.C. § 2255 [Doc. 1], Mr. Freeman's Amended or Supplemental Motion to Vacate Sentence under 28 U.S.C. § 2255 [Doc. 7], and the United States' Response [Doc. 25]. For the reasons herein, the Court will deny Mr. Freeman's motion.

### I. BACKGROUND

In 2014, the United States indicted Mr. Freeman and his co-defendant Crystal Lozano on charges of producing, distributing, receiving, and possessing child pornography. [Superseding Indictment, Doc. 14, at 2–3, No. 2:14-CR-00073-2-JRG]. After unsuccessfully moving, through counsel, to quash or dismiss the indictment,[1] Mr. Freeman entered into a plea agreement with the United States, though the Court ordered two competency examinations before holding a change-of-plea hearing. [Orders for Mental Exam, Docs. 42 & 78, No. 2:14-CR-00073-2-JRG]. In 2016, Mr. Freeman pleaded guilty to knowingly possessing child pornography, in violation

---

[1] Mr. Freeman's attorney argued that "[t]he prosecution has no credible evidence against [him]." [Mot. to Quash, Doc. 30, at 4, No. 2:14-CR-00073-2-JRG].

of 18 U.S.C. § 2252A(a)(5)(B). [Plea Agreement, Doc. 67, at 1, No. 2:14-CR-00073-2-JRG; Minute Entry, Doc. 105, No. 2:14-CR-00073-2-JRG]. The plea agreement's factual basis states:

> On November 1, 2013, a forensic interview was conducted with a minor child at the Children's Advocacy Center in Mosheim, Tennessee. During the interview, the child indicated that photographs had been taken of her private parts [pointing to the vagina on an anatomical drawing].
> On April 1, 2014, the Greeneville Police Department, went to the residence of co-defendant Crystal Lozano, 406 Elk Street, Apartment Q92, Greeneville, Tennessee, to speak with Lozano about a statement Lozano made to Tennessee Department of Children's Services regarding Lozano taking child pornographic photographs of the aforementioned child, and sending them to her boyfriend, the defendant. Lozano signed a waiver of her rights and wrote a confession statement.
> Lozano admitted in her confession statement that she took child pornographic pictures at the request of the defendant. Lozano stated that, "I took 3 pics of her with her vagina opened and one with just her panties pulled to the side," referring to pictures taken of a prepubescent child. Lozano further admitted that, a couple of days later, she took some additional photos of the child while the child was sleeping. At the time, the child had only a night shirt and panties on. Those pictures were sent to the defendant's cellular telephone. The defendant possessed the photographs on his phone while residing in the Eastern District of Tennessee. On May 9, 2014, an examiner with the FBI conducted a forensic interview of the aforementioned minor child. During the interview, the child identified nude photos of herself, indicating that they were photos possessed by the defendant and Lozano.
> On June 12, 2014, a search warrant and arrest warrant were executed at the residence of Lozano. Lozano agreed to talk with FBI agents, and admitted that she had taken photographs of a minor child's vagina. The photos were taken on a Casio Exilim C721 cellular telephone, which was manufactured outside the United States. The defendant gave Lozano the telephone. After taking the pictures, Lozano sent them to the defendant via text message to the defendant's cellular telephone.
> On June 27, 2014, FBI agents in the Eastern District of Michigan executed a search warrant and arrest warrant at the residence of the defendant. Two laptop computers and a cellular telephone were seized during the search, all of which were manufactured outside the State of Tennessee. A forensic examination of the computers and cellular telephone revealed the presence of child pornography, including photographs of the aforementioned prepubescent child, which had been texted by Lozano to Freeman.
> The defendant admits that he knowingly possessed visual depictions of child pornography, depicting a lascivious exhibition of the genitals of prepubescent children, and that said visual depictions traveled in interstate commerce.

[Plea Agreement at 2–3].

Leading up to Mr. Freeman's sentencing, the probation officer prepared and filed a presentence investigation report, in which he applied several offense-specific enhancements: (1) a two-level enhancement under USSG § 2G2.2(b)(2) because the pornographic images involved a prepubescent minor, (2) a four-level increase under § 2G2.2(b)(4) because the pornographic images portrayed sadistic or masochistic conduct or other depictions of violence, (3) a five-level increase under § 2G2.2(b)(5) because Mr. Freeman engaged in a pattern of activity involving the sexual exploitation or abuse of a minor, (4) a two-level increase under § 2G2.2(b)(6) because his offense involved the use of a computer, and (5) a three-level increase under § 2G2.2(b)(7)(8) because his offense involved at least 150, but less than 300, pornographic images. [PSR, Doc. 109, ¶¶ 30–34, No. 2:14-CR-00073-2-JRG].

The probation officer also concluded that Mr. Freeman, under 18 U.S.C. § 2252A(b)(2),[2] was subject to an enhanced statutory penalty of ten to twenty years' imprisonment because he had a prior conviction for second-degree criminal sexual conduct with a minor in Michigan. [*Id.* ¶¶ 46, 68].[3] With a criminal history category of II and a total offense level of 31, his guidelines range at sentencing was 121 to 151 months' imprisonment. [*Id.* ¶ 69; Statement of Reasons, Doc. 124, at 1, No. 2:14-CR-00073-2-JRG]. He faced a minimum term of supervision of five years and a maximum term of life. 18 U.S.C. § 3583(k).

Although Mr. Freeman's attorney objected to the enhancements under § 2G2.2(b)(4), (b)(5), and (b)(6), [Def.'s Objs., Doc. 113, at 1–6, No. 2:14-CR-00073-2-JRG], the Court overruled those objections, [Hr'g Tr., Doc. 142, 24:5–8, 45:19–22, 48:4–6], and applying a

---

[2] Section 2252A(b)(2), in relevant part, states that "[w]hoever violates . . . subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.").

[3] Mr. Freeman tied down his eight-year-old half-niece, digitally penetrated her until she bled, and threatened to kill her if she told anyone that he sexually assaulted her. [PSR ¶ 46].

3

guidelines range of 121 to 151 months [*id.* at 49:19–21], the Court sentenced Mr. Freeman to 151 months' imprisonment and a lifetime of supervision, [J., Doc. 123, at 1–2, No. 2:14-CR-00073-2-JRG]. Mr. Freeman appealed the Court's sentence, arguing, "for the first time," that his prior conviction in Michigan was not an offense that triggered 18 U.S.C. § 2252A(b)(2)'s enhanced penalties. [Sixth Circuit Order, Doc. 146, at 1]. More specifically, he argued "that his prior Michigan conviction for second-degree criminal sexual conduct . . . does not relate to the generic federal offenses under the categorical approach applying the least-culpable-conduct principle." [*Id.* at 2]. The Sixth Circuit, however, rejected this argument and upheld his sentence because he failed to establish that this Court committed plain error. [*Id.*]. Now, Mr. Freeman moves the Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The United States opposes his motion. Having carefully reviewed and considered Mr. Freeman's claims and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). Similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons

for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

In pursuing § 2255 relief, Mr. Freeman raises a battery of claims of ineffective assistance of counsel. His claims include allegations that his attorney was ineffective because she did not challenge the application of § 2252A(b)(2) to his sentence, did not conduct an investigation into the case or the witnesses against him, did not file a renewed motion to dismiss the indictment, did not object to the Court's consideration of his psychological examinations during sentencing, did not object to certain guidelines enhancements, did not object to the Court's imposition of a lifetime term of supervised release, did not file a suppression motion, did not object to venue, did not seek dismissal of the indictment under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., and did not file a notice of appeal. He also argues that he unknowingly and involuntarily entered into his plea agreement and claims that the United States engaged in prosecutorial misconduct. In response, the United States correctly contends that Mr. Freeman's claims are untimely.

A. The Timeliness of Mr. Freeman's Claims

Section 2255's one-year statute of limitations states:

The limitation period shall run from the latest of—

    (1) the date on which the judgment of conviction becomes final;

6

Case 2:14-cr-00073-JRG-MCLC Document 174 Filed 03/31/22 Page 6 of 9 PageID #: 2509

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Of these four subsections, only § 2255(f)(1) and § 2255(f)(4) are relevant to Mr. Freeman's case. "When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final [under § 2255(f)(1)] upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426–27 (6th Cir. 2004) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)). This ninety-day period runs not from the date of the Sixth Circuit's mandate but from the date of the Sixth Circuit's entry of its order. *See* Supreme Court R. 13.1 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."); *see United States v. Smith*, Crim. No. 12-cr-20095, Civ. No. 15-cv-13814, 2016 WL 491837, at *1 n.1 (E.D. Mich. Jan. 8, 2016) ("[T]he date of the mandate does not impact the length of the ninety day window in which writ of certiorari must be submitted to the Supreme Court." (citing *id.*)).

The ninety-day period began to run on September 22, 2017, which is the date when the Sixth Circuit ruled on Mr. Freeman's direct appeal, and expired on December 21, 2017. Mr. Freeman's conviction therefore became final on December 21, 2017, and his § 2255 motion was due in this Court one year later, on December 21, 2018. 28 U.S.C. § 2255(f)(1). Mr. Freeman,

7

however, did not file his § 2255 motion until January 14, 2019, and it is therefore untimely under § 2255(f)(1). Although Mr. Freeman, as an inmate, benefits from the mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 275–76 (1988), he did not place his § 2255 motion in his prison's internal mail system until January 8, 2019, [Pet'r's Mot. at 24]—after the expiration of § 2255(f)(1)'s one-year deadline.

In addition, Mr. Freeman does not argue that he is entitled to equitable tolling,[4] nor can he. The doctrine of equitable tolling allows courts to toll, or stop the running of, § 2255's statute of limitations when a litigant's failure to meet it "unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quotation omitted). The party requesting equitable tolling bears the burden of establishing his right to it, and in the case of a habeas petitioner, he is entitled to equitable tolling only if he shows (1) he has pursued his rights diligently and (2) some extraordinary circumstances prevented him from timely filing his claim. *Id.* Mr. Freeman timely filed his own notice of appeal, *see* [Pet'r's Am. Mot. at 3 ("Because counsel refused to do so, Petitioner had to file [a notice of appeal] himself[.]")], and the Sixth Circuit appointed counsel who could identify any viable arguments on appeal, [Sixth Circuit Letter, Doc. 128, at 1–2, No. 2:14-CR-00073-2-JRG]. So even if Mr. Freeman's attorney did not heed his instruction to file a notice of appeal, her failure to do so is not an extraordinary circumstance that prevented him from filing a timely appeal. He therefore has not discharged his burden of establishing his right to equitable tolling, and his claims fail as untimely.

---

[4] The Court gave Mr. Freeman thirty days to file a reply to the United States' argument that his claims are untimely, but now, roughly forty days later, he has not replied. [Order, Doc. 3].

8

Case 2:14-cr-00073-JRG-MCLC   Document 174   Filed 03/31/22   Page 8 of 9   PageID #: 2511

## B. Certificate of Appealability

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Ms. Freeman to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find that its dismissal of Mr. Freeman's claims as time-barred is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Freeman.

## IV. CONCLUSION

As the petitioner under § 2255, Mr. Freeman fails to meet his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. Mr. Freeman's motion to vacate, set aside, or correct his sentence [Doc. 1] and his amended motion to vacate, set aside, or correct his sentence [Doc. 7] are therefore **DENIED**. All outstanding motions are **DENIED as moot**, and this case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
